THOMAS ET AL., RESPONDENTS, *v.* FRANK, APPELLANT.

[Submitted June 6, 1895.  Decided June 10, 1895.]

CONVEYANCE—*Purchase price—Consideration in deed.*—Suit was brought against the occupants of certain land by persons claiming the ground under a quartz location. To resist this litigation the plaintiffs in the case at bar located the land for themselves and the other defendants in said suit, and agreed that in case said defendants were successful in defending the suit, said plaintiffs would convey to each of them who contributed his *pro rata* share towards the defense such portion of the land as the amount of money contributed should bear to the whole amount expended in defending the suit. The defense prevailed, but several of the owners of lots involved in the suit failed to pay their proportion of the expenses, and the said plaintiffs were obliged to pay, in excess of the amounts actually collected by the *pro rata* assessments, a deficiency of about five hundred dollars. One of the lot owners who had defaulted in his payment, and whose assessment amounted to about forty-one dollars, sold and conveyed his interest to the defendant in the case at bar, who, after ascertaining the right, title and interest of said plaintiffs in the lot, had a deed prepared by a notary, conveying the interest of these plaintiffs to himself, but no consideration was expressed in the deed. The defendant then directed the notary to take the deed to the plaintiffs, who fixed the consideration at two hundred dollars, and asked the notary to see the defendant and ascertain if that was satisfactory. The notary did so, and, after consulting the defendant, informed the plaintiffs that the defendant wanted the deed, and did not care what consideration was inserted. The plaintiffs thereupon executed the deed with a consideration of two hundred dollars written therein, and the deed was delivered to the defendant. *Held,* that the plaintiffs had an equitable claim to be reimbursed for their expenditures, and, it being clearly with a view to secure such reimbursement that they fixed upon the consideration so named in the deed, to which the defendant must be deemed to have assented, they were entitled to recover that amount.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to recover the consideration named in a deed. Judgment was rendered for the plaintiffs below by McHATTON, J. Modified and affirmed.

Statement of the case prepared by the justice delivering the opinion.

Suit by plaintiffs against defendant, in the justice's court, to recover the sum of $200, alleged to be due for the price of the surface ground of certain lots conveyed by plaintiffs to defendant, and which, it is alleged, was the price agreed upon for such conveyance.

The defendant denied any promise to pay plaintiffs $200, or any other sum, for the property, but alleged the facts to be

that plaintiffs and one Archer agreed with all the occupants of the Destroying Angel lode claim, in Butte, whereby plaintiffs and Archer were to convey to all the occupants of said lode claim the several lots owned by such occupants on the said claim, and a *pro rata* interest in the surface ground of said claim, if said occupants would contribute to the defense of a lawsuit then pending in the courts of Silver Bow county, wherein Lee Mantle and others were plaintiffs, and plaintiffs herein and others were defendants; that defendant contributed and paid to plaintiffs his proportion of such expense, to wit, $41.25, which amount represented defendant's *pro rata* interest in said litigation, and plaintiffs accepted the same as full consideration for the conveyance to defendant of the lots described in the complaint, and in consideration thereof, and of the release of his *pro rata* interest in the additional surface ground of the Destroying Angel lode claim by defendant, plaintiffs executed to defendant the deed mentioned in the complaint, which said amount defendant has fully paid, and has also released to plaintiffs his claim to the *pro rata* surface ground of said lode claim; that the consideration of $200 recited in the deed was not the real consideration, but that the same was as heretofore stated.

The case was tried to a jury. Verdict for plaintiffs for $200. Defendant appealed to the district court. The case was there tried to a jury. Again the plaintiffs secured a verdict for $200. Motion for new trial was made and overruled. Defendant appeals.

*Forbis & Forbis*, for Appellant.

*Thompson Campbell*, for Respondents.

Hunt, J.—The only error relied upon by the appellant is the insufficiency of the evidence to sustain the verdict of the jury.

About 1883, Lee Mantle and others sued the occupants of certain portions of the townsite of Butte, claiming the ground

under a quartz location called the "Diadem Lode." To resist this litigation the occupants organized as the "Destroying Angel Pool," and the ground involved in the litigation was located by these plaintiffs and Archer as the "Destroying Angel Lode Claim." This location was made for the benefit of the occupants on the ground under the townsite patent, as appears from the agreement offered in evidence on the trial. Under the terms of this agreement these plaintiffs and Archer, on January 19, 1884, agreed with a large number of persons that in view of the litigation heretofore referred to, and the contribution by them to carry the same on, to defend the same for the benefit of the parties to the agreement; and in consideration of the premises, and of the money so paid and furnished to said first parties (plaintiffs herein), they also agreed with all defendants in said suit, "who shall come in and pay and contribute money to defend said suit, that in case said defendants in said suit shall be successful in the defense of said suit and shall be the prevailing parties therein, and shall defeat said plaintiffs, Lee Mantle *et al.*, in said suit, the said first parties will then deed and convey, by good and sufficient conveyance, such part or portion of the surface ground of said Destroying Angel lode as each of the said second parties, and other defendants who shall pay as aforesaid, claim and are entitled to. Said first parties further agree with said second parties that in case any part of the surface ground shall be and remain after making said conveyances aforesaid, and after taking out such part or portion thereof, as said first parties claim as town lots, that they will convey to said second parties such part or portion of said remaining portions of said surface ground of said Destroying Angel lode claim as the amount of money paid and contributed by them shall bear to the whole amount expended in defending said suit; that is to say, that after said first and second parties each get the amount of surface ground claimed by each of them as town lots, that any and all remaining parts or portions of said Destroying Angel lode claim surface ground shall be shared, and belong to said first and second parties, and others who may, as defendants, contribute to the defense

of said suit as aforesaid, *pro rata*, according to the amount of money each may have paid towards said defense.''

It further appears that one Van Gundy, of Deer Lodge, prior to 1886, had been the owner of the lot out of which the present suit grew. Van Gundy neglected to pay his *pro rata* of the expense of the defense of the suit while the same was pending. It does not appear that Van Gundy was directly a member of the pool, but that his property was affected by the litigation is admitted. Other claimants failed to pay, and plaintiffs were obliged to pay sums largely in excess of the amounts actually collected by the *pro rata* assessments upon lot owners, made under the terms of the agreement hereinbefore referred to. These excesses amounted to between $400 and $500. The defendant Frank bought the Van Gundy lot about this time, and had some conversation with plaintiffs in regard to their right, title, and interest to the same by virtue of the Destroying Angel claim. There was, however, no definite agreement as to the price to be paid to plaintiffs for their interest. Defendant had a deed prepared, conveying the interest of these plaintiffs to himself. No consideration was expressed in the deed when it was prepared. A notary was then directed by defendant to take the deed to plaintiffs. Plaintiffs told the notary that the consideration to be put in was $200, and asked him to see defendant, and ascertain if that was satisfactory. The notary did consult defendant, and returned to plaintiffs, telling them, substantially, that defendant wanted the deed, and did not care what the consideration inserted was. Plaintiffs thereupon executed the deed, with a consideration of $200 written therein, and the same was delivered to defendant by the notary.

Defendant says he did not authorize the notary to make any agreement. The notary did not make any agreement, but did convey to defendant the fact that plaintiffs wanted a consideration of $200 inserted in the deed. After this message was taken by the notary, and delivered, the notary at once returned to the plaintiffs, and took their acknowledgment to the instrument. We think that the jury were justified in believing,

from all these facts, that the defendant assented to the consideration of $200 demanded by the plaintiffs, and authorized the notary to secure their signatures, after he was told of the consideration.    Any other inference, too, would be to cast a suspicion of willful deception and wrong upon the conduct of the notary himself, and would imply that he deliberately misled the plaintiffs into a false belief concerning the consideration named in the deed.    Such an inference is not to be presumed, and is not warranted by the evidence.

Defendant says that he did not mean to pay plaintiffs anything more than he had paid on the amount assessed to Van Gundy, which was $41.25.    Doubtless, he honestly believed he might secure the interest of Van Gundy by the payment of that sum.    But when it is remembered that Van Gundy had not paid his assessment when he ought to have paid it, and that these plaintiffs had to pay out some $400 to $500 more than the assessments for the litigation amounted to, it is but equitable and just that they should be reimbursed by those who were the beneficiaries of their expenditures, and it was clearly with a view to secure such reimbursement that they fixed upon the consideration of $200 before they were willing to execute and deliver the deed to defendant.

The appellants suggest that plaintiff had no right to demand this sum, but this suggestion is disposed of by answering that they did have an equitable claim to be reimbursed, and if the defendant, as the purchaser of an original owner, who had defaulted in his payment, desired to come in after such default, it does not seem at all inequitable that he should pay, as a consideration for the privilege, a share of the deficiency incurred by plaintiffs, who had expended time and money in the litigation affecting the property.

The facts present a case where the jury were warranted in finding as they did, and when we consider that two juries and a judge have reviewed the testimony, and reached the same conclusion, we do not feel at liberty to disturb it.    We are of opinion, however, that, inasmuch as the plaintiffs evidently disregarded the check of defendant for the amount of the Van

Gundy assessment in the negotiations, the defendant's check for that sum, delivered to Beck, treasurer, should be returned to defendant, or, if the same has been presented and paid, the amount thereof, with legal interest thereon since date of actual payment, should be credited to defendant on the amount of this judgment.

Let the judgment therefore be modified to conform to these views, and, as so modified, let it be affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.